OSBORNE MOTORS, INC., Petitioner v. COMMISSIONER OF INTERNAL @REVENUE, Respondent
Osborne Motors, Inc. v. Commissioner
Docket No. 1398-74.
United States Tax Court
T.C. Memo 1976-153; 1976 Tax Ct. Memo LEXIS 251; 35 T.C.M. (CCH) 691; T.C.M. (RIA) 760153; May 18, 1976, Filed D. Paul Alagia, Jr., and Michael E. Lannon, for the petitioner. Jack A. Joynt, for the respondent. WILES
MEMORANDUM FINDINGS OF FACT AND OPINION WILES, Judge: Respondent determined a deficiency in petitioner's income taxes of $14,889.90 for its fiscal year ending September 30, 1969. The sole issue is whether compensation paid to two of petitioner's officers was reasonable and thus deductible under section 162(a)(1). [1]
FINDINGS OF FACT Petitioner, a Kentucky corporation, had its principal place of business in Radcliff, Kentucky, when it filed its income tax return *252 for its fiscal year ending September 30, 1969, and when it filed its petition in this case. Petitioner, an automobile dealership operating under a Ford Motor Company franchise, was in the business of buying, selling, and servicing new and used cars and trucks. During the fiscal year ending September 30, 1969, petitioner had 500 shares of outstanding capital stock. J. Matthew Osborne owned 96 percent of the stock and his wife, Lois J. Osborne, and their children owned the remaining four percent. During the fiscal year ending September 30, 1969, J. Matthew Osborne was petitioner's president. Petitioner paid him $41,500.49 in compensation--$18,000.00 in salary and $23,500.49 as an officer's bonus. The bonus was two-thirds of one-half of petitioner's net profits of $70,501.45. During the same fiscal year, Lois J. Osborne was petitioner's vice-president and treasurer. Petitioner paid her $23,731.87 in compensation-- $5,980.00 in salary and $11,750.24 as an officer's bonus.[2] The bonus was one-third of one-half of petitioner's net profits of $70,501.45. Respondent disallowed $16,450.34 of J. Matthew Osborne's compensation and $11,750.24 of Lois J. Osborne's compensation. *253 At a board of directors meeting held January 7, 1963, the basic salaries of J. Matthew Osborne and Lois J. Osborne were set at $1,500 per month and $115 per week, respectively, effective January 1, 1963. This salary schedule remained unmodified thereafter, including the fiscal year ending September 30, 1969. Petitioner's policy regarding the amount of bonuses was established at board of directors meetings held on January 2, 1962, and January 6, 1964. The computation of bonuses remained unchanged thereafter, including the fiscal year ending September 30, 1969. At a meeting held January 6, 1969, petitioner's board of directors agreed that the salary paid to J. Matthew Osborne and Lois J. Osborne for the fiscal year ending September 30, 1969, would be the same as that established in 1963. The board further agreed to continue with the policy regarding the amount of bonuses. J. Matthew Osborne purchased Osborne Motors in January of 1954. He worked for a large Ford dealer in Louisville, Kentucky, for five years prior to that, one year as a salesman and the next four years as used car sales manager. When J. Matthew Osborne purchased petitioner, it was in a loss position. It *254 showed a profit, however, the first year of his management. He expanded petitioner by building new facilities, in some cases acting as general contractor by drafting plans and supervising the subcontractors. Furthermore, he spent long hours managing petitioner and controlling its overall operation through the fiscal year ending September 30, 1969. In addition, he took an active part in vehicle sales management during the year in question and prior years. Finally, he was responsible for operation of the franchise and accounted directly to Ford Motor Company officials for petitioner's operation. Petitioner first employed Lois J. Osborne in 1956. Initially she assumed the duties of the bookkeeper whom petitioner then employed. After evaluating the bookkeeping system, she reorganized it. She provided J. Matthew Osborne with inventory reports and reports calculating the amount of cash on hand. She became responsible for credit management, cost control, and comparative costs analyses. Lois J. Osborne designed computerized accounting forms, thus establishing an automated bookkeeping system upon which other auto dealerships have modeled their own systems. In addition to other duties, *255 she sometimes filled in for petitioner's office personnel. In her capacity as vice-president and treasurer, she had regular contact with Ford Motor Company management officials. Lois J. Osborne was also responsible for dealing with petitioner's accountants in the preparation of financial statements, tax returns, and all aspects of the accounting system. She reduced the time outside accountants spent in conducting their audits because of her total control of the accounting department. By handling various financial and administrative duties, she enabled J. Matthew Osborne to devote more time to the service aspects of the business. She regularly produced financial statements which analyzed the market area, shop sales, parts sales, new car and used car sales, and finance reserves so that she and her husband could analyze the comparative profitability of the various departments of petitioner. Lois J. Osborne was also instrumental in establishing the petitioner's pension, welfare, and medical plans. Petitioner, because of strict credit controls which Lois J. Osborne established and because of close observation of accounts, kept bad debts comparatively low and maintained an adequate *256 cash position necessary to meet current requirements. While the salaries of the Osbornes did not increase from 1963 through the end of the 1969 fiscal year, petitioner did increase salaries and bonuses of other employees. Petitioner did not increase the salaries of the Osbornes from 1963 through September 30, 1969, so that departmental bonuses paid to other employees would be greater, since the departmental bonus is computed after all salaries have been deducted. Petitioner did not declare or pay dividends from 1954 through September 30, 1969. Petitioner retained earnings to expand facilities, to repay loans, and to purchase automobile inventory and parts. Between the beginning and end of the 1969 fiscal year, petitioner made additions to property, plant and equipment of $75,502. During July, August, and part of September of 1969, the Osbornes vacationed in California, as they had done in the past. They owned three rental units in California which a California agent managed. While the Osbornes were in California, they were in regular contact with petitioner, receiving 10-day reports, monthly statements, and other records. There were also frequent telephone conversations. *257 Petitioner's busiest time of year for sales was the spring. ULTIMATE FINDING OF FACT The compensation which petitioner paid to J. Matthew and Lois J. Osborne for the fiscal year ending September 30, 1969, was reasonable. OPINION Section 162(a)(1)[2] allows a deduction for reasonable compensation paid to employees. The issue is whether compensation paid J. Matthew Osborne and Lois J. Osborne for the fiscal year ending September 30, 1969, was reasonable. This is a factual question; petitioner has the burden of proof. Botany Worsted Mills v. United States,278 U.S. 282 (1929); Dielectric Materials Co.,57 T.C. 587, 591 (1972). The compensation paid J. Matthew and Lois J. Osborne was a combination of salary and bonuses. The bonuses were based upon a percentage of petitioner's net profits for the year. Basing *258 the calculation of bonuses upon a percentage of net profits is an acceptable method of oompensating employees (provided, of course, that the amount of compensation is reasonable). Sec. 162-7(b) (2) and (3), Income Tax Regs.; Mayson Mfg. Co. v. Commissioner,178 F. 2d 115, 120 (6th Cir. 1949); Lewisville Investment Co.,56 T.C. 770, 782 (1971). After a review of the evidence in this case, we are convinced that the total compensation paid J. Matthew and Lois J. Osborne was reasonable. Accordingly, we hold for petitioner. The Findings of Fact set out fully the various services which the Osbornes performed to justify their compensation. We need not review all of those services here. A few examples will be sufficient. J. Matthew Osborne spent long hours directing petitioner, took an active part in vehicle sales management, and accounted directly to the Ford Motor Company for petitioner's operation. Lois J. Osborne was responsible for credit management, cost control, and comparative cost analyses, had regular contact with Ford Motor Company management officials, and dealt with petitioner's accountants in preparation of financial statements and *259 tax returns. We do not think Lois J. Osborne was paid merely because she was the spouse of petitioner's president. She worked hard for her money. It is true that the Osbornes spent July, August, and part of September on vacation in California. However, this was after spring, the busiest portion of the business year for sales. Furthermore, the Osbornes were in constant contact with petitioner, receiving 10-day reports, monthly statements, and telephone messages. In addition to the above, we note that the Osbornes' salaries and the method of computing bonuses have remained unchanged since the early 1960's. While the Osbornes' bonuses would be larger in more profitable years, they would be smaller in less profitable years. As the court stated in Roth Office Equipment Co. v. Gallagher,172 F. 2d 452, 456 (6th Cir. 1949): "If the principle of bonus compensation is to be recognized, it carries with it the payment of liberal compensation in good years and moderate compensation in lean years." Finally, we note that while petitioner paid no dividends, capital improvements were made throughout the years. In fiscal 1969 alone, petitioner made additions to property, *260 plant, and equipment of $75,502. Decision will be entered for the petitioner. Footnotes
1. Statutory references are to the Internal Revenue Code of 1954, as amended.↩
2. Lois J. Osborne also received a $6,001.63 bonus as corporate comptroller; this amount was not contested.↩
2. SEC. 162. TRADE OR BUSINESS EXPENSES. (A) In General.--There shall be allowed as a deduction all the ordinary and necessary expenses paid or incurred during the taxable year in carrying on any trade or business, including-- (1) a reasonable allowance for salaries or other compensation for personal services actually rendered;↩